PROVOSTY, J.
Defendant is sued as surety on a promissory note, and her defense is that she is merely an indorser, and that she has been released by the failure of the payee to present and protest the note timely.
To show that she is merely an indorser, defendant relies first upon the order in which the indorsements appear on the note — hers below that of the president of the People’s Bank, payee of the note.
From this order of the signatures the inference would be that the bank indorsed the note to defendant, and that defendant indorsed it over to piaintiff, or to the persons through whom plaintiff acquired it, and that defendant was merely an indorser. But plaintiff proved by the discount clerk of the bank that such was not the history of the note; that defendant’s signature was already on the note when the Bank indorsed it. This parol evidence was admissible. The time when, or the order in which, the indorsements on a note were made, may be proved by parol. Brown v. Butler, 99 Mass. 179; Essex Co. v. Edmands, 12 Gray, 278, 71 Am. Dec. 758; Pearson v. Stottard, 9 Gray, 199; Austin v. Boyd, 24 Pick. 64; McComb v. Thompson, 2 Minn. 139 (Gil. 114), 72 Am. Dec. 84; Lewis v. Harvey, 59 Am. Dec. 286; Cook v. Southwick, 60 Am. Dec. 181; Prescott Bank v. Caverly, 66 Am. Dec. 473; Wright v. Morse, 69 Am. Dec. 291; Marienthal v. Taylor, 2 Minn. 150 (Gil. 123); Peckham v. Gillman, 7 Minn. 447 (Gil. 355); Strulevant v. Randall, 53 Me. 149. See, also, as somewhat analogous, Cole v. Smith, 29 La. Ann. 551, 29 Am. Rep. 343.
Besides, even were this parol evidence excluded, the fact that defendant’s indorsement preceded that of the bank in point of time appears otherwise abundantly in the record. The certificate of protest shows that the protest was made at the request of the bank, the' original payee, and that at that time defendant’s indorsement was already on 'the note. One of the allegations of the answer is to the effect that the bank, the original payee, never parted with the note, but still owns .it; in other words, that the bank never indorsed the note at all, except for the purpose of a fictitious transfer to plaintiff. That allegation is an express admission of the priority of the defendant’s indorsement. True, that allegation is made in the alternative, and only in the event that the defendant is held to be a surety; but it is nevertheless an express admission of the contention of plaintiff that the defendant’s indorsement antedates that of the bank. Such being the case, the inference is that defendant signed the note as surety. “One who, not a party to commercial paper, indorses it, becomes a surety.” Thielman v. Guéblé and Nippert, 32 La. Ann. 262, 36 Am. Rep. 267.
But that inference is open to rebuttal, and defendant’s second contention is that, both by the circumstances under which she signed the note, and by the conduct of the bank afterwards, she is shown to have been a mere indorser.
*743 The circumstances are detailed by defendant’s son, as follows:
“Q. Would you state to the court how the People’s Bank got possession of that note, and how your mother’s indorsement came to be placed thereon?
“A. I was notified by the president of the bank that I was overdrawn at the bank, and to come down and see about it, and I went to the bank and offered him a note of the E. A. Lambert Co. Q. That is, you offered him an E. A. Lambert Co., him., note? A. Yes, sir. Q. What did he reply to that? A. He replied that if I got it indorsed he would accept the note, and I suggested to have it .indorsed by my mother, which I did, and presented the note, and it was accepted. Q. And he demanded an indorser? A. Yes, sir. Q. Was there anything said at that time about your giving any security or guarantor? A. No, sir. Q. He asked for an indorser? A. Yes, sir. Q. And you agreed to give it to him? A. Yes, sir. Q..'Now, when you went to see your mother, what was the understanding with her? What happened? A. 1 told her the circumstances about this overdraft, and that I could fix it at the bank if she would indorse the note. Q. Did you ask her to indorse the note? A. Yes, sir. Q. Did she agree to indorse it? A. Yes, sir. Q. Did you say anything to her about being security on that note? A. No, sir. Q. Was the word ‘security’ or anything of that kind ever suggested between you two? A. No, sir.”
This evidence, of itself, throws very little light, if any at all, upon the nature of defendant’s contract. The argument that, both in the conversation between the witness and the bank, and in the conversation between the witness and his mother, the words “indorse” and “indorser,” were used, and never once the word “surety,” is only skin-deep, amounting to very little more than to an idle play upon words. The substance of the matter is that the bank wanted the name of a solvent person on the back of the note, and that the witness agreed to furnish that of his mother, the defendant, and that defendant affixed her signature without any definite understanding in regard to whether she should be surety or merely indorser. She simply signed, and that was all. The words “indorse” and “indorser” have a popular as well as a technical meaning, and, if we came to the probabilities of the matter, the chances would be that the defendant, when she affixed her signature, had not the slightest idea of the difference between the contracts of suretyship and indorsement.
But, in, our opinion, the conduct of the bank leaves very little room for doubt that defendant was understood to have signed merely as indorser.
The bank treated the deféndant ás an indorser by having the-note protested. Protest was unnecessary if she was a surety, and necessary if she was an indorser; therefore the protest gives rise to a strong implication that the bank understood her to be an indorser. The bank treated her as an indorser a second time by putting its indorsement above, instead of below, hers. It may have done so inadvertently, but the very strong probability is that its president, when he affixed the signature, knew well that the presumption in regard to defendant’s being surety or merely indorser would be according to the order of the indorsements, and that, so knowing, he put his signature above that of defendant advisedly. At any rate, if his act in so doing was the result of accident or inadvertence, plaintiff should have offered evidence of the fact.
The protest was made one day late, so that the defendant, if merely an indorser, was released; and we find that, for a space of more than two years and a half thereafter, the bank continued to hold this large note of $10,000 without demanding payment of *745 defendant; and not a word of explanation is offered of this unbusinesslike, delay, and none can be gathered from the record, except, possibly, from the fact that the insolvent estate of the maker of the note was unsettled, and that there might have been some expectation of getting payment from that quarter without troubling defendant. There did come out of the insolvency certain dividends, which were credited.
Added to the peculiarity of the indorsement of the bank, is the very significant fact that it is made without recourse.
Plaintiff acquired this commercial paper more than two and a half years after its dishonor, under that very peculiar and significant indorsement; and he does not show what was the consideration of the transfer, but leaves the field wide open for conjecture.
No objection was made to the proof of the conversations of defendant’s son with the president of the bank and with defendant, already referred to. Hence the question of the admissibility of this evidence does not arise in the case. Plaintiff’s learned counsel, in his oral argument, suggested that the evidence should be considered as having been objected to because earliét in the case the trial judge had taken under advisement the question of the admissibility of parol evidence to show the time when, or the order in which, the indorsements were made. We find no force in this suggestion. Defendant’s objection to plaintiff’s evidence cannot be made to do service for an objection by plaintiff to defendant’s evidence, and the fact that the judge had the objection of defendant under advisement was no obstacle to plaintiff’s making an objection of his own. Besides, non constat that plaintiff’s objection, if made, might not have been good, and that of defendant bad. Plaintiff’s ease, however, has not suffered from the admission of the evidence, as it has had no influence upon the court.
Judgment affirmed.